IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| IP CO., LLC,<br><br>   *Plaintiff*,<br><br>  v.<br><br>CELLNET TECHNOLOGY, INC.,<br><br>   *Defendant*. | Civil Action No. 1:05-CV-2658-CC |

**DEFENDANT CELLNET TECHNOLOGY, INC.'S MEMORANDUM
IN OPPOSITION TO IP CO., LLC'S MOTION TO COMPEL**

**I.     INTRODUCTION**

IP Co. LLC's ("IPCO") Motion to Compel is completely without merit and should not have been filed. Specifically, IPCO's motion suffers from at least the following fatal defects:

- IPCO did not satisfy the "duty to confer" requirements of L.R. 37.1;

- IPCO claims, without basis, that Cellnet is related to third parties Schlumberger and Atos Origin;

- IPCO's requests were demonstrably overbroad, both in terms of the products at issue and the applicable time periods; and

- Cellnet has produced over thirteen thousand pages of responsive material and has never refused to produce responsive and unobjectionable documents as IPCO claims.

For example, hours ***before*** IPCO filed this Motion, Cellnet produced a CD containing over 5,000 pages of responsive documents, just one of a series of

regular productions detailed below.  (Ex. B.)  Indeed, *before* filing its Motion, IPCO acknowledged in writing that it would receive thousands more pages of documents from Cellnet.  (Ex. C.)  Furthermore, at the time of filing, the parties were negotiating a resolution to IPCO's overly broad requests, and IPCO represented that it would "follow up with a more detailed response" to Cellnet's latest letter.  Instead of responding, IPCO filed this premature "midnight"[1] Motion, which the Court should deny.

## II.  FACTUAL BACKGROUND

### A.  IPCO's Infringement Allegations and Cellnet's Accused "UtiliNet®" Product

There are two important factual predicates the Court should appreciate in addressing this Motion – that Cellnet has existed for less than two years and that IPCO has accused only one Cellnet Product, UtiliNet®.  With those predicates in mind, Cellnet's objections, responses and overall discovery behavior have been more than reasonable.

---

[1] The notification of service generated by the Court's CM/ECF system was sent to Cellnet's counsel at 11:38 p.m. on Friday, March 24, 2006.  (Ex. A.)

### 1.     Cellnet's Corporate History

Cellnet was formed on July 23, 2004 and did not originally develop the UtiliNet® product.  Rather UtiliNet® technology and other assets passed to Cellnet through many predecessor corporations, including two multi-national entities - Schlumberger Ltd. ("Schlumberger") and Atos Origin Corporation ("Atos").[2]  Cellnet is not related to either Schlumberger or Atos, and IPCO's assertions otherwise are simply false.

In 1999, Schlumberger Ltd. purchased the assets of a bankrupt company known as Cellnet Data Systems and sold those and other assets to Atos in 2004.  In July 2004, the management team responsible for the Cellnet business bought the business from Atos and has since operated independent of Schlumberger and Atos.  (*Id.*)  In this final transaction, Cellnet did not assume any liability for past patent infringement, confirming the irrelevance of pre-2004 activities.  (Exs. X & Y (filed under seal).)

---

[2] A detailed recitation of this history is found in the attached "Corporate History" (Ex. W).

### 2.     Cellnet's UTILINET® and CELLNET® Product Lines

Cellnet[3] provides data communication systems and automation technology, such as automatic meter reading units, to the utility industry.  Those systems fall under either the UtiliNet® or Cellnet® umbrellas, which work fundamentally differently from each other.  IPCO has accused the UtiliNet® system of infringement, but not the Cellnet system:

> "Cellnet's UtiliNet[®] System, including but not limited to the InfiNet application, and any associated software sold, licensed, or leased or offered for sale, license or lease, and any other Cellnet Systems similar thereto that have not yet been disclosed by Cellnet in discovery . . . ."

(Ex. U.)  As such, only UtiliNet® is at issue, and Cellnet has never refused discovery on the UtiliNet® products.

### B.     IPCO's Overbroad Discovery Requests

Two major problems permeate IPCO's first interrogatories and requests. (Exs. F & G.)  First, IPCO seeks information concerning any "Wireless Network System," defined as:

> [T]wo or more networks connected by a Gateway Server where one or more of the networks is a wireless network.

---

[3] When referring to the company Cellnet, there is no ® used.  When referring to the product suite called Cellnet®, it is used.

(IPCO's Requests for Documents at Definition 5.)  This definition of "Wireless Network System" ensnares both UtiliNet® and Cellnet® product lines, despite that only one is accused.  Because the IPCO definitions are overly broad in this manner, Cellnet has objected, narrowed the requests to the UtiliNet® products and responded fully through production.

Second, IPCO seeks documents from January 1, 1990 forward through its definition of the "Applicable Time Period."[4]  Cellnet has objected to that time period because it only came into being in 2004 and simply does not possess or control documents belonging to its predecessors Schlumberger and Atos.  Again, Cellnet has not withheld responsive documents from Cellnet's inception forward.

In its Motion, IPCO claims that "[a]ccess to information dating back to 1990 is critical and relevant," because Cellnet is relying on its prior art technology as an invalidity defense.  (IPCO's Mem. Supp. Mot. Compel 3.)  This is a reference to the fact that UtiliNet® products were on the market as early as 1994 and are

---

[4] For example, IPCO's Document Request No. 18 seeks:

> All financial statements, balance sheets, sales figures, and profit and loss statements of Cellnet, or its predecessor entities, for each fiscal year during the ***applicable time period***.

(IPCO's First Requests for Documents No. 18. (emphasis added)).

therefore prior art to the patents IPCO has bought and now asserted. However, Cellnet has repeatedly committed to produce the prior art documents. (Ex. J (explaining to IPCO that "Cellnet certainly will produce documents relevant to [its invalidity] defense.").)  Thus, putting aside the few IPCO requests that seek prior art information, which Cellnet has satisfied, IPCO cannot demonstrate the relevance of other documents dating to 1990.

### C. IPCO Preemptively Filed Its Motion Without Completing Good Faith Efforts to Resolve the Parties' Disagreement

As stated above, when IPCO filed this Motion, the parties were in the midst of negotiations. On March 16th, Cellnet provided a detailed letter supporting its objections. (Ex. J.) One week before the Motion, IPCO represented that it would "follow up with a more detailed response." (Ex. Z at 2.) And just *one day* before the Motion, the parties conferred, and Cellnet reiterated that it was reviewing Cellnet documents as the company collected them and was producing responsive documents on a rolling basis. (Green Decl. ¶ 2.) Instead of a reviewing those documents and determining whether necessary documents were being produced, IPCO filed this premature Motion.

### D. Cellnet Has Produced the Documents and Information IPCO Seeks to Compel

Cellnet committed to produced documents on a rolling basis and has done so, thus far producing over 13,000 pages of responsive documents.

- On March 10, 2006, Cellnet produced 1,049 pages of UtiliNet® product and marketing documents (Ex. K);

- on March 17, 2006, Cellnet produced 4,260 pages of UtiliNet® sales and financial data (Ex. L);

- on March 24, 2006, Cellnet produced an additional 5,831 pages of UtiliNet® sales and financial data (Ex. B);

- on March 31, 2006, Cellnet produced of 847 pages of UtiliNet® financial and customer-related documents (Ex. M);

- on April 7, 2006, Cellnet produced 71 pages of UtiliNet® technical documents (Ex. N);

- on April 10, Cellnet produced 1,098 pages of UtiliNet® technical documents (Ex. O); and

- on April 13, 2006 Cellnet produced documents describing Cellnet's formation in July 2004 (Ex. Z).

Importantly, Cellnet has produced all of these responsive documents under Patent L.R. 2.1, because there is no protective order in place. There is no protective order because IPCO has "considered" Cellnet's proposals for nearly four months, introducing significant delay under its own control.

The productions described above fully satisfy the twelve "categories" of documents and information IPCO has introduced through its Motion, in direct contravention of L.R. 37.1(A)(2), which of course requires a "verbatim" quotation of requests, interrogatories and responses thereto.  (IPCO's Mem. Supp. Mot. Compel 15-16.)  With respect to these "categories," Cellnet has (a) satisfied them; (b) is/was in the process of fulfilling them; (c) cannot satisfy them because the information is not within Cellnet's possession, custody or control; or (d) objected to them because responsive information is not relevant to any claim or defense.

### E.  IPCO's Procedural Missteps in Non-Party Discovery

IPCO's Memorandum contains glaring factual misstatements about the relationship between Cellnet and its predecessors.  IPCO served a Rule 45 *subpoena* on Schlumberger, which objected thereto through its counsel, the law firm Gibson, Dunn & Crutcher LLP.  (Ex. R at 8).  Through that *subpoena*, IPCO confirmed that it was aware that Schlumberger was a separate entity represented by separate counsel.  Yet, IPCO's memorandum asserts that "Schlumberger is represented by counsel for Cellnet" (IPCO's Mem. Supp. Mot. Compel 7.), a complete fabrication.  IPCO may have stretched the facts to support its next

erroneous assertion that "Cellnet also was orchestrating Schlumberger's refusal to produce such documents." (*Id.* At 8. )

Understandably displeased with IPCO's misrepresentations, Schlumberger wrote to IPCO demanding that "IPCO correct the factual misrepresentations in its motion to compel." (Ex. V.)  IPCO has taken no corrective action and its erroneous statements still stand.  It is also completely improper for IPCO to move in this District to compel discovery from Schlumberger, which was *subpoenaed* in the Southern District of New York.  This obvious point deserves no more attention.

IPCO served multiple *subpoenas* on Atos.  (Ex. S.)  IPCO first *subpoenaed* the wrong Atos entity, received a motion to quash and withdrew the *subpoena*.  IPCO's errors prevented it from obtaining discovery from Atos, not some ongoing Cellnet effort "to frustrate IPCO's access to relevant information." (IPCO's Mem. Supp. Mot. Compel at 7.)  As with Schlumberger, Atos is not subject to a *subpoena* from this District.

IPCO served another *subpoena* on a Cellnet business partner—Landis+Gyr, Inc. ("L+G"), whom the undersigned does represent in Delaware, where the *subpoena* issued.  IPCO and L+G have exchanged over a dozen pieces of correspondence concerning the fatal flaws in the L+G *subpoena*.  Those defects

include: (a) a demand that L+G produce documents almost a thousand miles from where documents are housed; (b) the same over breadth that infects the discovery requests to Cellnet, discussed above, and (c) the unnecessary burden of separately producing additional copies of the same documents Cellnet has produced or is producing.  (Ex. T.)

L+G moved to quash IPCO's overbroad *subpoena* and there were already three briefs in Delaware on this issue.  Still, IPCO argues to this Court that "L+G has refused to . . . even offer a meaningful explanation as to why L+G believes there would be any burden in responding to the subpoena," (*Id.* at 8.)  Again, as with Schlumberger and Atos, L+G is not subject to a *subpoena* from this District.

IPCO's inability to issue proper subpoenas to proper parties in proper fora may frustrate it, but the frustrations are of its own creation.  The non-party *subpoena* issues are not part of some conspiratorial "orchestration," and there is no evidence otherwise.

## III.   LEGAL STANDARDS
### A.   Governing Law

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  FED. R. CIV. P. 26(b)(1).  That

is, a "fact must be germane to a specific claim or defense asserted in the pleadings for information concerning it to be a proper subject of discovery." 6 *Moore's Federal Practice* – Civil § 26.41(2)(A).  Furthermore, the burden is on "[t]he party seeking production [to] demonstrate that the request is relevant . . . ." *Hunter's Ridge Golf Co., Inc. v. Georgia-Pacific Corp.* ___ F.R.D. ___, 2006 WL 532114, *2 (M.D. Fla. Mar. 3, 2006).

In addition, the Local Rules impose specific obligations on any litigant filing a motion to compel, namely:

>   (1)   Include the certification of counsel with regard to the duty to confer required by Fed.R.Civ.P. 37(a)(2)(A)(B);
>
>   (2)   Quote verbatim each disclosure, interrogatory, deposition question, request for designation of deponent, or request for inspection to which objection is taken;
>
>   (3)   State the specific objection [thereto] ….

L.R. 37.1 (N.D. Ga.).  Where litigants fail to meet one of these obligations, courts have routinely denied motions.  *See, e.g., Cooper v. Atlanta Board of Education*, 2006 WL 288221 *3 (N.D. Ga. Feb. 6, 2006).  Here, IPCO has violated **all three** requirements.

## IV. ARGUMENT

### A. IPCO's Motion Does Not Comply With Local Rule 37.1

As outlined above, the parties were negotiating a resolution to IPCO's overly-broad requests when IPCO prematurely filed this Motion. IPCO's certification cannot satisfy the duty to confer in good faith set forth in L.R. 37.1. This alone is sufficient reason to deny IPCO's motion.

IPCO also did not comply with the L.R. 37.1(A)(2) requirement to "quote verbatim each . . . interrogatory . . . or request . . [for which] objection is taken." Instead of indicating the specific interrogatories or requests IPCO seeks to compel Cellnet to supplement, IPCO has crafted the list of twelve "categories" touched on above. (IPCO's Mem. Supp. Mot. Compel 15-16.) These "categories" are incomprehensible. For example, IPCO has asked the Court to "Deny[] Cellnet's objections" to the definitions of "Wireless Network Systems" and "Applicable Time Period." IPCO refers to "[d]enying Cellnet's objections . . . regardless of whether such responsive information, documents or things are in Cellnet's possession or in the possession of Schlumberger or another affiliate of Cellnet[.]"

Does IPCO actually seek to compel *Cellnet* to respond to an interrogatory with information solely in Atos's or Schlumberger's possession? Such a result is

not sanctioned by the Rules and makes little sense. Such confusion abounds in IPCO's Motion.

### B.   Only Documents Concerning UtiliNet® Are Relevant.

As explained above, IPCO's Patent L.R. 4.1 infringement contentions *only* accuse UtiliNet® and systems "similar thereto." (Ex. U.) The Patent Local Rules exist to allow the Court and the parties in patent cases to clearly demark the relevant products and issues and prevent "the 'shifting sands' approach to patent litigation." *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1045 (N.D. Cal. 2004).

In 2001, the Northern District of California implemented a set of Patent Local Rules. In 2004, the Northern District of Georgia modeled its patent local rules thereafter. *See* State Bar of Georgia, *Intellectual Property Section Newsletter*, 3 (Fall 2004). A central purpose of such rules is to "require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed."[5]

---

[5] *Cryptography Research, Inc. v. Visa Int'l Serv. Ass'n*, 2005 U.S. Dist. LEXIS 37013, 5-6 (D. Cal. 2005)); *see also Integrated Circuit Sys. v. Realtek Semiconductor Co.,* 308 F. Supp. 2d 1106, 1107 (N.D. Cal. 2004) ("Once the initial disclosures are made, the lawsuit proceeds as to the products accused in those disclosures."); *InterTrust Techs. Corp. v. Microsoft Corp.*, No. C 01-1640, 2003 U.S. Dist. LEXIS 22736, *8 (N.D. Cal. 2003) ("The purpose of Patent Local

Consequently, requests going beyond the accused products are improper.  In *Caliper Technologies Corp. v. Molecular Devices Corp.*, the patentee sought to compel documents that might show whether the defendant was "selling other products which infringe its patents besides [those initially identified]." 213 F.R.D. 555, 558 (N.D. Cal. 2003).  Denying the motion, the court noted, "[a] party may not obtain documents in order to discover whether it has a cause of action.  [The plaintiff's] request is denied for failure to show relevance."  *Id.; see also Survivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) ("The magistrate judge acted well within her discretion in limiting discovery to those matters Surfvivor itself had identified as the related infringing products.").

IPCO's suggestion that it "is not clairvoyant and cannot identify every single such [infringing] product until the conclusion of fact discovery," turns the Patent Local Rules on their head.  (IPCO's Mem. Supp. Mot. Compel at 6.)  Under the Patent Local Rules, patentees are not entitled to use discovery as a "fishing expedition" to investigate products not accused of infringement.  As the court explained in *InterTrust Technologies Corp. v. Microsoft Corp.*, Rule 11 "requires that a plaintiff make a reasonable inquiry into the applicable facts and law ***before***

---

Rule 3-1 [governing Infringement Contentions], however, is in fact to be nit picky,

*filing* a document," such as a complaint or infringement contentions. 2003 U.S. Dist. LEXIS 22736 at *7 (emphasis added)  Resorting to post-filing discovery to ascertain whether one has a patent infringement case, is simply improper. *See Caliper Techs. Corp.*, 213 F.R.D. at 558 ("Caliper wants to know if MDC is selling other products which infringe its patent besides the IMAP kits. . . .  [But, a] party may not obtain documents in order to discover whether it has a cause of action.").  Here, IPCO has only accused the UtiliNet® product line, and that is where discovery should begin and end.

### C.     IPCO's Definition of "Applicable Time Period" Is Overbroad.

As stated above, Cellnet was formed in 2004 and has posed no objection to producing documents from that point forward concerning the UtiliNet® product lines, including financial, technical, marketing and sales documents, which form the typical universe of documents in a patent case.  When viewed in that light, there should be no controversy as to Cellnet's production or the sufficiency thereof.

The controversy is based wholly on IPCO's unjustified and unrealistic expansion of discovery beyond UtiliNet® products as made, sold and marketed

---

to require a plaintiff to crystallize its theory of the case and patent claims.").

since 2004.  While IPCO is correct that prior art from December 6, 1996 (the priority date of IPCO's earliest patent) is relevant to the invalidity analysis, again, Cellnet has committed to produce such information and has done so.  (Ex. J.)

Once again, the controversy surrounds the *other* IPCO requests that bear no relation to prior art or the invalidity issues.   For example, IPCO's Request for Documents No. 16 seeks,

> All documents that refer, reflect or relate to any market survey, marketing plans, marketing projections, market analysis, sales plans or sales projections any Wireless Network System, including but not limited to UtiliNet, designed, made, used, supplied, sold, licensed, leased or offered for sale, lease or license by Cellnet during the applicable time period.

(IPCO's First Set of Requests for Documents, No. 16.)  Given that Cellnet did not even exist until 2004, marketing plans and projections from prior periods are irrelevant and certainly are not in Cellnet's possession, custody or control.  Marketing documents from 2004 forward have already been produced.

There are also legal bars that help shape the relevancy issue.  IPCO's '516 patent did not issue until June 19, 2001, and no pre-issuance products, sales or marketing activities (whether undertaken by Cellnet or a predecessor) could be legally relevant to IPCO's infringement claim.  Also, in terms of the appropriate period for financial discovery, 35 U.S.C. § 286 limits damages recovery to the six

years immediately before an infringement complaint is filed.  As such, financial discovery can only be relevant back to 1999, and Cellnet itself only possesses financial information back to 2004, which it has already produced.

## V.     CONCLUSION

If it had exercised even a modicum of care in framing its Motion, IPCO would not have reiterated its over-reaching positions.  IPCO is entitled to discovery on UtiliNet® products, ranging from sales to technical documents, from the time Cellnet was created.  Cellnet has agreed to produce *all* such responsive and unobjectionable information and has honored that obligation.

Beyond these merits of the parties' positions, IPCO has not followed any of the three procedural provisions of L.R. 37.1.  IPCO conferred with Cellnet the day before the Motion and was apprised of the state of production and the commitments to produce on a rolling basis to avoid hindering IPCO's case preparation, yet it claims to have been frustrated by Cellnet's supposed refusals.  There is no evidence to support that assertion.

IPCO also ignored the procedural requirements of quoting the request and response, following which is to be analysis of that Request.  Instead, the Court now faces twelve new "categories," which Cellnet has already satisfied, that IPCO asks

us to consider anew.   This error-ridden motion practice follows hand-in-hand with IPCO's error-ridden *subpoena* practice, and cannot be rewarded.

The current Motion should therefore be dismissed, and Cellnet should be awarded its costs and fees in responding thereto.

Dated:  this 14th day of April,  2006

        FISH & RICHARDSON P.C.


        By: /s/ Christopher O. Green
            Nagendra Setty
            Georgia Bar No. 636205
            Christopher O. Green
            Georgia Bar No. 037617
            Noah C. Graubart
            Georgia Bar No. 141862

            FISH & RICHARDSON P.C.
            1230 Peachtree Street N.E.
            19th Floor
            Atlanta, Georgia 30309
            Ph: 404-892-5005
            Fx: 404-892-5002


        ATTORNEYS FOR DEFENDANT
        CELLNET TECHNOLOGY, INC.

## **CERTIFICATION OF COMPLIANCE WITH LOCAL RULES**

Defendant's brief has been prepared in Times New Roman typeface, 14 point font, is less than twenty-five (25) pages in length, and meets the requirements of L.R. 5.1 and 7.1.

## CERTIFICATE OF SERVICE

    I hereby certify that on this day I electronically filed "DEFENDANT CELLNET TECHNOLOGY, INC.'S MEMORANDUM IN OPPOSITION TO IP CO., LLC'S MOTION TO COMPEL" with the Clerk of Court using the CM/ECF Systems which will automatically send e-mail notification of such filing to the following attorneys of record:

> John C. Herman
> Matthew C. Gaudet
> Antony L. Sanacory
> DUANE MORRIS
> 1180 West Peachtree Street, NW
> Suite 700
> Atlanta, GA 30309-3448

    This 14th day of April, 2006.

> By: /s/ Christopher O. Green
> Nagendra Setty
> Georgia Bar No. 636205
> Christopher O. Green
> Georgia Bar No. 037617
> Noah C. Graubart
> Georgia Bar No. 141862
>
> FISH & RICHARDSON P.C.
> 1230 Peachtree Street N.E.
> 19th Floor
> Atlanta, Georgia 30309
> Ph: 404-892-5005
> Fx: 404-892-5002
>
> ATTORNEYS FOR DEFENDANT
> CELLNET TECHNOLOGY, INC.